The Court now calls Case 117-418 Illinois State Treasurer v. Illinois Workers' Compensation Commission. Are you ready to proceed? You may proceed, Dargan. Good morning, Your Honors, Counsel. May it please the Court, my name is Mary Labreck. I'm an Assistant Attorney General here representing the Illinois State Treasurer as Ex Officio Custodio of the Injured Workers' Benefit Fund. The General Assembly has authorized the Treasurer to defend the fund against workers' compensation claims to hold the claimants to their burden of proof through an adversarial presentation of arguments. Otherwise, this is unlikely to happen because the fund becomes involved only when an employer is uninsured and unable to pay for benefits. Thus, by the time of the administrative hearing, the employer may no longer exist, or if it exists, may have insufficient funds to give it a real stake in the defense. This case is about whether the Treasurer must file an appeal bond when he seeks judicial review of decisions of the Workers' Compensation Commission on the fund's behalf. I'd like to start by pointing out that excluding the fund from the bond requirement makes sense in terms of functional analysis of the Act, because unlike any other payor, the fund does not assure a full payment of the award. The bond requirement and the pro rata rule are two different ways of responding to the same problem, the possibility of a shortfall of funds. When the legislature considered whether the fund might run out of money before all claims were paid, in cases that did not involve appeal, it chose not to ensure full payment. It could have borrowed money for that purpose, as the Rate Adjustment Fund does, or it could simply have allowed the claims to remain outstanding until money came in the next fiscal year, but it chose not to do that. So there's no reason to assume that the legislature meant to assure full payment in the case of appeal. But we believe that the appellate court was mistaken in its interpretation of Section 19F2 of the Act for three reasons. First, as a matter of the state's sovereign rights, costs should not be imposed upon the state, including the cost of appeal bonds, in the absence of affirmative statutory language indicating an intent to do so. Leaving that aside, the plain language of Section 19F2 indicates that the bond requirement applies only when an award for the payment of money is due. And third, even if it were plausible that the bond requirement applies to the treasurer, the consequences of applying it would be absurd. Under the heading of costs, it is a rule of interpretation that the rights of the sovereign are not impaired by general legislative enactments which apply to private rights unless an intent to make the state liable is expressed in the statute. And it's not enough to point to a generally applicable provision that seems to cover the situation, which this is not. But even if it were, Illinois courts have applied this rule to provisions on filing costs, costs of the record, compensation for delay, post-judgment interest, and the bond requirement is just as much an incursion on the rights of the sovereign as any of those things in terms of both liability and control. At the very least, it costs the state the amount of the bond premium, and it also affects the state's control of the money. Counsel, you make some very good arguments why it should not apply to the treasurer. How do we get over the language of the statute that at least first glance appears unambiguous, that the treasurer is not exempt? Your Honor, I understand that it may look that way at first glance, but we argue that plain language actually supports our argument because if you look at the statute in the full context of what the act is doing, then it becomes clear. Because the bond requirement is directed at the one against whom the commission shall have rendered an award for the payment of money. And common sense suggests that such an award should entail a determination of money. The one thing you would certainly expect of an award for money is that it tell you how much money is due. And section 4D of the act provides for the treasurer to be joined with the employer on the claim, and therefore he is joined in the award. But the payment amount that is in the award clearly applies only to the employer because section 4D of the act indicates clearly that the amount to be paid by the fund will not be determined until the second proceeding at the end of the fiscal year. You say the statute's meaning is plain, or do you think the statute is ambiguous? We think the meaning is plain. The common sense interpretation of the award for payment of money means it's got to tell you something about the money, how much money is due. And the section 4D of the act, not section 19F2, but section 4D, clearly tells you that no amount of money is due from the treasurer at that time. The amount of the award against the employer is part of the calculus in that proceeding, but there are other factors such as how much money is in the fund, how much will be collected by the end of the year, how many claims there will be by the end of the fiscal year, and also whether the claimant has filed her notice to the commission within 90 days of receiving the notice of her award. And so at the time the award is issued, the fund owes the claimant nothing, and that's why the award is not payment of money with respect to the fund. And the list of exemptions does not apply that the treasurer is included either, because the list of exemptions comes straight from the definition of employer in section 1 of the act, and there's no evidence that the legislature was even aware of the possibility that it might be applied to the treasurer. And the fact that the provision is very broad, it includes every possible government employer with the exception of the state and federal governments. And the state has already been excluded in section 19F1, and the federal employer won't appear before the commission because the federal government has its own program for handling these things. And when you look at the breadth of the list of exceptions and you consider the fact that most government agencies will appear before the commission only as employers, I can think of only two that do not, and that is the treasurer and the self-insurer's security funds board. And also there's no reason for distinguishing the treasurer or the fund as a government agency, because if anything, the funds are less likely to be dissipated because the fund doesn't do anything except pay benefits. And so there's no likelihood of spending on anything else or being lost. And the fund also has only derivative liability, and while the statute doesn't differentiate between primary liability and derivative liability, it doesn't make sense to suggest that all government agencies who have primary liability should be exempted and the one that has only derivative liability should be forced to file the bond. And finally, the practical consequences are observed. No matter how you construe the bond requirement, it upsets the legislative scheme. If you take money from the fund, then you hurt other claimants, whether or not you give any benefit to the claimant at issue in the appeal. And if you take money from the treasurer's or the attorney general's own appropriations, you're increasing the liability of the state, and that is inconsistent with the scheme as a whole, which otherwise leaves the state free of any liability and control. And, according to Zakarzeka, you do this without accruing any benefit to the claimant, because the bond only serves to ensure what the statute provides. But if the bond provides nothing more than the statutory amount, then it adds no additional protection. And in any event, the bond is never going to be triggered by definition, because no matter how little money is left in the fund, a pro rata distribution can be done. A pro rata distribution of zero is zero. And then there are the reasons that apply to all state agencies. You don't need a bond because the state is not going to dissipate its assets. We presume it will not. And also the claimant has some protection through his right to seek mandamus relief. A private employer, a claimant needs a bond against a private employer so that they can sue on the bond. But in cases involving the state, having a contractual promise adds nothing to the statutory guarantee. Tell me why you just said that the bond would never be triggered. If the state did, in fact, invade the fund and reduce it to zero, would the bond come into effect then? You're talking about a legislative diversion situation? Yes. The bond still wouldn't be triggered, because the rule is pro rata. You take what's ever in there. You don't go to any other source, and according to the statute, you distribute what's in there. And if the state should take the money, then there's nothing there, so we distribute nothing, but it satisfies the statute. And we don't think that's particularly likely to happen either. It's true that there were legislative diversions in the past, but at that point there was a great deal of extra money sitting in the fund. And since then, and it no doubt seemed reasonable at the time to take this excess money and use it for other things that the state really needed, since then we've had more claims coming in, and I think it's unlikely that we'll have a problem of legislative diversion. And if that is what the General Assembly wanted, they can solve their own problem by just not doing the legislative diversion. They don't need a bond requirement to keep them from doing that. And I'd like to say just a little bit about Section 19F1 of the Act. The reason that the language about accepting cases of claims against the state of Illinois, we think does not apply to keep the treasurer from filing an appeal in the first place, because the same language must be interpreted the same way, as Zachary Zaka says, when it appears elsewhere in the Act. But it is she who is failing to comply with this rule, and the appellate court did when they failed to apply the language of the state of Illinois the same way in Sections 19F1 and 19G that they applied it in Section 2, which says that the state hereby elects to provide and pay compensation according to the provisions of this Act. You cannot interpret the language of the state of Illinois in that provision as meaning any entity covered by sovereign immunity, whether or not it is an employer, or it would be drastically expanding the state's liability to cover any claim. And the legislative history suggests also that the exclusions in 19F1 and 19G were meant to keep Section 2 of the Act from becoming a waiver of sovereign immunity, because that language was adopted at the same time that the language in Section 2 was adopted at the same time that the exclusions in Section 19F1 and 19G were enacted. And it doesn't make sense to suppose that the legislature intended the phrase the state of Illinois to be a general test of sovereign immunity. It may be helpful to distinguish between employers using the test of sovereign immunity to determine whether or not any particular employer is a state employer, but you don't need to use it for any other kind of entity because the state is only going to be submitting to liability if the entity is an employer. Also, the rule that waiver of sovereign immunity must be clear and unequivocal does not affect this case because the treasurer must be excluded from sovereign immunity because he's acting in a special capacity in fund cases. So in this court's decisions in Pelham and Moline, the court found that there was no sovereign immunity because the action was a continuation of the original action rather than an original action against the state, and also that there was a very minor incursion on the rights of the sovereign. And that applies in this case. And finally, Section 19F1 has never previously been interpreted as preventing the treasurer from appealing in other fund cases. This is not dispositive, but we think it's significant because the fund is relatively new, but there have long been fund cases, and it has never been suggested that the exclusionary language in Section 19F1 stands as a barrier to the circuit court's jurisdiction in those cases. If the court has no further questions, we'll stand on our briefs. Thank you. May it please the court. My name is Matt Belcher, and I represent your injured worker, Benita Zacharzeska. Good morning, Mr. Clark. I think that Justice Thomas hit upon something that's very important. Even the Attorney General's Office acknowledges that the language is plain. Language is unambiguous, and we don't go through the contortions, the gymnastics, and the legislative history if the plain and ordinary language speaks for itself. Mr. Belcher, it wouldn't be your problem, but candidly, do you think there was legislative oversight in this case? I think that the legislature, if we look at the difference between 18.1, which was created subsequent to the 2005 creation of this fund, they carved out an exception for commission employees who now have the right to administrator review. There is no explicit waiver of sovereign immunity. The plain language itself indicates that the fund must file a bond, and for that reason, it isn't mine to question why. It's mine to abide, and by abiding by the statute, we concluded that, respectfully, this honorable court lacks jurisdiction. And that would be a matter to be looked at later if the legislature decides to amend if we agree with your plain language argument, right? I'm sure they could fix it. Most controversies and most conversations about appealed bonds are more accurately discussions about bonds to state the enforcement of a judgment. These bonds are set forth by Supreme Court Rule 305. The purpose of any bond is to protect and to preserve the status quo during dependency of the appeal, and since all appeals cost all parties significant money and lost opportunity, there is another benefit to requiring a bond, and that's to give pause to the party considering the appeal. I respectfully submit that the Attorney General's Office has misapprehended two very important points, and that's why we're here for you today. The first is that the plain ordinary language controls. We don't need to go into any further investigation, and if we apply the plain ordinary language of F-1 and F-2, we find ourselves with a list of people that are required to file a bond and a list of people that are exempted from filing a bond. The list of people exempted from filing the bond are basically municipal corporations. It's the same group of people that are set forth in Article 7 of the Illinois State Constitution. Villages, a town, it says municipal corporations, other body politics. They don't delineate every single type of municipal corporation. They say other body politics. So, for example, a hamlet, a borough, Naperville decides to change its name back to Napers Settlement, they still wouldn't have to file a bond. The Attorney General's Office doesn't allege that the Injured Workers Benefit Fund is a municipal corporation, and I submit to you that they're not. They have no budget, no registered agent, no employees. They aren't a body politic. They're not listed on the ordinary plain reading of the people who are exempted from the filing of a bond, and therefore the Injured Workers Benefit Fund must file a bond. And this is consistent with the unanimous finding of the appellate court. Mr. Belcher, in Section 19F2, is there any language supporting a distinction between present debt to pay money and a contingent right to share in the next distribution of the fund? Justice Burke, I don't find that differentiation inside the language. The second misapprehension that I believe the Attorney General makes is concluding that the amount of the bond is the amount of money that you get. You don't get $56,400 because the commission said that's the amount of the bond. In fact, the amount of the bond is capped at $75,000. You get the amount of money at the time that your judgment is final, merely because the commission concludes that the bond must be $56,000, or that the circuit court in a 305I hearing concludes that the bond must be $150,000. That doesn't mean that's how much money I get. I still must prove up the underlying judgment. So this contingency is prorogative. It doesn't make any difference. The bond is a surety. It's a security blanket to protect the status quo. Justice Carmar, you mentioned what sort of different situations could cause the fund not to have any money. And I submit to you that there's lots of reasons why my client might need a bond, one of which would be perhaps the legislature decides to that this whole injured worker benefit thing isn't really working out, and we're just going to shut it down. What if Representative Bradley's House Bill 1032 in 2011, which would repeal the entire Workers' Compensation Act, what if the governor had signed that? What if the governor-elect in the General Assembly decides that we're going to change the way the system works, and then we have a whole class of people that have judgments that are pending because of an appeal that are unable to collect their funds? And this isn't a lottery. The people who have these awards didn't win the awards in the sense that they got something they weren't entitled to. They're crime victims. Every single person who's ineligible to claim it is a victim of a crime. The failure to have workers' compensation insurance is a criminal act. These people fall off buildings and get injured at job sites, and they're unable to collect their wage replacement benefits. Must the treasurer take the appeal bond money out of the fund? No, Judge. Chief Justice Garment, I don't believe that they have to take the money out of the fund. Do they have authority to take it? Where do they pay it from? There's two jurisdictional requirements, at least two jurisdictional requirements, to have your case brought before the circuit court at the time that this case was heard. The law's been changed a little bit, and I'll address it just briefly. But there's two things that you have to do. You have to file a bond unless you're exempted, and number two is you have to pay for the transcript. Every commission decision says that the approximate cost of this transcript will be X amount of dollars, $35. And in order to get a copy of that transcript, to have it sent over to the circuit court, somebody has to pay for it. And at C9 of the record, you'll see there's a receipt here. It's a handwritten receipt from an Illinois attorney general. They've received $35 for the copy of this transcript, and it was signed by Amy Masters, who at that time was the secretary of the commission. Where did that $35 come from? It was apportioned from someplace. If they can afford the $35, then I'm pretty sure that there's a means to pay for the bond as well. And I direct you not as some sort of controlling law, but just as a matter of intellectual curiosity to Supreme Court Rule 305I. Supreme Court 305I would require the treasurer in this setting to file a bond. Where does that money come from? Supreme Court Rule 305I requires in an appeal by a government officer that's not for the benefit of the general public, if he would like to stay the execution of that judgment, he must file a bond. It's not drastically different than having the treasurer file a bond in a workers' compensation claim. And I'd submit to you that there is, as I said before, the people who have these eligible claimants, these people have been wronged. They haven't been able to have surgeries authorized. They're only allowed to claim one judgment or one award from the Injured Workers' Benefit Fund. It is a remedial fund to help out in a remedial situation for people who have already been victimized in this situation. And I submit to you that the General Assembly directed us to whom does not have to file a bond. And the Attorney General's Office tells you that it's the plain meaning tells you that they're not on the list. If they're right, we don't go any further. What role does the treasurer have in this, in handling of this bond fund other than to hold it and pay it out as directed by the commission? Section 4D makes them a party to the case. And that's how we sort of differentiate these Pelham holdings. The Pelham case is when can you garnish the treasurer's office. Well, they said, in my mind, the axis on which that decision twists is whether or not the treasurer's office is really a party to that garnishment. And I believe that they aren't. But the General Assembly makes the treasurer a party to this case. But if there's not enough money in there at the end of the year, you only get a pro-ratus share rate. Yes, Justice. But they're an actual party to the case. And this is why it becomes important when we read F1, they are the party against whom the money judgment was entered. The award is entered against the treasurer. It's not entered against the, you know, it's not contingent in the sense that they're a cosigner on this judgment. If you're a cosigner on an auto loan and the principal doesn't pay, the cosigner must pay. That isn't the case in the Injured Workers' Benefit Fund. They are jointly, severally, principally responsible for the payment of this award. And because they are a party to the case, I hope that, you know, this case right here does not arise in a vacuum. It doesn't arise to be generous. It arises subsequent to the appellate court's finding in a case called Drzevka-Zakor. And in the case of Drzevka-Zakor, when there was an award against the Injured Workers' Benefit Fund for an X amount of dollars, I sought the payment of that award in full. The Injured Workers' Benefit Fund had paid the medical bills directly, thereby depriving my office of attorney fees handily, as well as depriving my client of the opportunity to go in and negotiate those bills. So we went before the circuit court and said, We have an award against the fund. They haven't paid it. Give us a judgment. And the attorney general's office said no, and the circuit court agreed, and the appellate court agreed that, in fact, in this instance, the treasurer, as the custodian of the Injured Workers' Benefit Fund, is a party to this case, and they're the state of Illinois, and they are immune by sovereign immunity. You may not enforce this judgment against them. So if I submit to you that the treasurer can't have it both ways, either they have the privilege of sovereign immunity or they have to follow the rules. If they are, in fact, the state of Illinois, then we can't be here anyway because the General Assembly has not granted explicitly jurisdiction to this court to review the case. Any other claim against the state of Illinois, absent the changes made to 18.1, are not reviewable in the circuit court. If a state employee is injured and the commission awards money, just like the commission awarded my client money, there is no administrative review of that decision on the basis of sovereign immunity. And this court, on March 4th or March 5th of 2014, denied a petition for leave to appeal the Joseph Gazatra case. Obviously, including at least in that instance, the treasurer, as ex-official custodian of the Injured Workers' Benefit Fund, was, in fact, the state of Illinois. And I submit to you that either avenue would reinstate the award that the commission made to benefit my client. Either they need to follow the rules and file a bond, or they're the state of Illinois, in which case administrative review in the jurisdiction of this court is misplaced. You indicated that the award is against the treasurer, but at the end of the year the amount that's paid is not necessarily the same as the amount of the award. Is that correct? Yes, Justice. It depends on the amount left. Yes, Justice. The Attorney General argued that the bond would never be triggered. How do you respond to that? That if there's no money left in there, the bond's not going to protect your client. The 4D of the Act contemplates that other people may, in fact, pay part of that award. So there are third-party awards, and it pertains to the state, the right to a subrogation interest in any of those payments. But I submit to you that if the Injured Workers' Benefit Fund is closed, then we would have the right to proceed on an action against that bond, and then I would be paid the amount of money that, at that time, is owed on the award. So that's at least one instance where there would be money there. Also, if, in fact, the Attorney General's Office spent a little bit, and I don't want to use up too much of your time going over the same things, but just this is a brief summary. It's the position of the injured worker, in this case, that they would like to have their award of benefits, as the Elderly Workers' Compensation Commission determined, reinstated. And in order to do that, we just have to look at whether or not this court and any circuit court had jurisdiction to address that decision. And I submit to you that either under 19F1, a claim against the state, that there's sovereign immunity and there's no jurisdiction, consistent with the Druzevka-Zator finding, or number two, that there's a list, and the Attorney General's Office tells you the plain meaning of that list is they're not on it. And because they didn't file a bond, then I submit to you that there is no jurisdiction for this court, and the decision of the Elderly Workers' Compensation Appellate Court Division, in this case, should be affirmed in totem. If you're correct that you can proceed against the bond, you'd be better off if all of the money in the fund was diverted elsewhere. Is that correct? Well, this award was for this year, there was 100% payment. And the instant cases before this court, there was an award for 100%. It is true that other years there's been less than 100%. But is it not true, then, if there was less than 100%, you would get less than the award, but if the entire fund was dissipated through diversion by the legislature, you could proceed against the bond and get the entire amount of your award? And how does that conflict with the statute that would say you're paid on a pro rata basis based upon what's in the fund? Because then there would be an adjudication of the amount due under the bond. They just don't mail me the check for the $56,400 of the amount of the bond. It would then have to go in and foreclose on the bond, and at that time a court of competent jurisdiction would determine the amount owed. And just because the bond is limited to $75,000 or the bond is $50,000, that isn't the amount of money that the check gets in the mail the next day. So I submit to you that we still need to be adjudicated by the body with jurisdiction, and I don't think that that defeats the plain and ordinary language of 19F2 that there should have been a bond file. And the reason the General Assembly wanted the bond to be filed, I don't think we need to go further. And as I said earlier, we need to comply and abide, and it isn't ours to ask or wonder why if, in fact, the Attorney General's office is correct and that the plain, ordinary language speaks for itself. So I thank you for your time. Counsel, let me just ask you this quickly. Yes, Justice. And you may have already answered this, so I apologize, but did the commission actually render the award in name on the face of the order against the employer and the fund? Yes, Justice. So both entities? The award itself is against the treasurer as custodian and injured workers benefit fund. I mean, that's what it says on the face of the order? Yes. Okay. Thank you. Thank you. I'd just like to say a few things in response. First, in response to the last question about what the award says, the award mentions both the treasurer and the employer and the other people in the caption, and throughout it refers to a singular respondent. But it also says in a special section that the award is entered against the fund to the extent it's appropriate under Section 4D. And so it does not clearly suggest by any means that it is entered in just the same way as it is against the employer. I'd also like to mention that the joinder provision, he says, makes the state liable, but it does provide that the treasurer shall be a party to the case, but all this means is that he can participate in the case. It does not submit him to any broader sort of liability. It's nothing more than the same kind of – we have joinder provisions like that in administrative review cases all the time, and they are not considered to violate sovereign immunity or to be bringing liability against the state. With respect to his mentioning the $35 paid for the case record, it's not clear exactly what happened with respect to that payment. It mentions an account. It's not clear that money was actually paid, but even if it was, what may have happened at any particular point in the past does not indicate what the rights of the treasurer and the fund are in this case. If it did, we wouldn't be here because it was custom in the past that the treasurer did not pay a bond. And he wants to have a different rule applied here, so he shouldn't, by the same token, be relying on anything that they may have done in the past with respect to the little record payment. He is inconsistent about when and what he can get money from the bond, as opposed to letting the statute pay out. He suggests that if the account is closed, then he gets the full amount of the bond, but there's nothing that suggests that the legislative change entitles him to the full amount of the bond, and he's not entitled also to something like, he seems to think that it's something like 19G relief, and 19G relief says that you can't bring any legal defenses, you just pay the full amount of the award and that's it. But the reason that the provision doesn't allow for any defenses is that the party that opposes the award has already had an opportunity to appeal at that point. There was the award, and then there's an opportunity to appeal within 20 days, and then the person can bring the judgment. There was no opportunity for the treasurer to appeal based on the commission's determination at that second proceeding. So the treasurer would be entitled to bring legal arguments, and he'd be in no better position than he would be through his right to bring a claim for mandamus. And in fact, in Drutuska-Zater, he was allowed to bring a claim for mandamus. He argued it, and he lost on the merits because the court found that he simply didn't have the right to the relief that he was looking for. I'd also like to address this claim that the treasurer can't have it both ways. He can't both have sovereign immunity and not have sovereign immunity. But actually he can, and the decisions in Drutuska-Zater and in this case are not inconsistent because sovereign immunity is not something that inheres in the treasurer in his very nature. Whether sovereign immunity applies depends on the claims that are brought and the relief that is asked for. And the claims that were brought and the relief that was asked for are very different in the two cases. The two decisions did rely on the language of 19G and 19F1, and they construed it as coextensive with sovereign immunity, and were arguing that that's not right. And they also said that the monies in the fund were not state funds, or in Drutuska-Zater, they assumed that they were not. But the bottom line results were correct because in the treasurer case, they held that it was in the administrative review action that there was no liability imposed on the state and there was no control exercised. And in Drutuska-Zater, they held that control was exercised. And that's right because a 19G action is very different from a judicial review action. In 19G, it was an action for enforcement. They are taking the treasurer and they're going to compel him to do something apart from what the statute says. That's the essence of control. That's bringing a defendant into court and making him do something. That's exactly what sovereign immunity says not to do. Whereas with the judicial review action, there is, although it's state money, because the pro rata rule provides for no money to be brought out from any other source, there is no possibility of increase or decrease in the liability. It's just things shifting around within the fund, and there's no control exercised against the treasurer because they simply interpret the law and leave the treasurer's management of things to himself. If the court has no further questions, I'll just leave you with a few things. We ask the court to find that costs, including cost of appeal bonds, should not be imposed on the state in the absence of affirmative statutory language. We also ask it to find that the plain language shows that the award, the payment of money, was not against the treasurer because it did not determine what amount was owed at the time of the award. And also that appeal is not barred under Section 19F1 because claims against the state means claims by a state employee, and also because the treasurer's participation in the claims is not subject to the state's liability or control. For all of the reasons presented in our argument and in our briefs, we urge this court to reverse the appellate court's finding of lack of jurisdiction and reinstate the appellate court's decision on the merits. Thank you. Thank you. In case number 117418, Illinois State Treasurer, etc., versus the Illinois Workers' Compensation Commission, et al., is taken under advisement as agenda number 14. Ms. Labreck and Mr. Belcher, thank you for your arguments today. Your excuse at this time, Marshall, the court's going to take a 10-minute recess.